UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DARNEL POWELL,

                 Plaintiff,                           **MEMORANDUM AND ORDER**

        v.                               18-CV-7022 (RPK) (PK)

NEW YORK STATE DEPARTMENT
OF EDUCATION and MARY ELLEN ELIA,
*Commissioner*,

                 Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Darnel Powell brings this action against the New York State Department of Education ("NYSED") and Mary Ellen Elia alleging that defendants deprived him of due process under the federal Constitution and various treaties and breached a contract with him, among other claims. *See* Second Am. Compl. (Dkt. #36); Pl.'s Letter dated June 1, 2021 (Dkt. #50). Plaintiff also appears to challenge the constitutionality of New York Education Law § 3020-a. Defendants move to dismiss the complaint in its entirety. *See* Mot. to Dismiss (Dkt. #44). For the reasons stated below, defendants' motion is granted and plaintiff's constitutional claims and treaty claims as to the NYSED are dismissed along with his facial challenge to Section 3020-a. The Court *sua sponte* dismisses all other claims against the NYSED. Since plaintiff failed to timely serve process on Elia, all claims against Elia are dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

1

**BACKGROUND**

I.     **Factual Background**

The following facts are drawn from the complaint and assumed true for the purposes of this order.

Between 2003 and 2010, plaintiff worked as an administrator in the Westbury School District (the "District").  Second Am. Compl. ¶¶ 4-5; *see id.* ¶¶ 45-46.  Plaintiff asserts that he was "well-respected . . . by his colleagues, peers[,] and [the student body]" for most of his career. *Id.* ¶ 21.  Plaintiff alleges that things changed after he gave a poor performance review to Lisa Maldonado, a guidance counselor and plaintiff's subordinate.  *Id.* ¶¶ 23-29.  One month later, according to plaintiff, Maldonado complained to her union representative that plaintiff had sexually harassed her.  *See id.* ¶¶ 29-31.  The District appointed an assistant superintendent to investigate the alleged harassment.  *Id.* ¶¶ 32-33.  The assistant superintendent could not identify sufficient evidence to support Maldonado's allegations, *id.* ¶¶ 34-35, but the district ultimately hired a law firm to look into them further, *see id.* ¶¶ 37-39.

Bronwyn Black, the law firm's investigator, interviewed plaintiff, Maldonado, and others, including a sixth-grade teacher named Ann Alexander.  *Id.* ¶ 40; *see id.* ¶ 27.  Alexander accused plaintiff of sexual harassment.  *Id.* ¶ 42.

Following Black's investigation, "the [D]istrict charged [p]laintiff with several counts of misconduct."  *Id.* ¶ 44.  In January 2010, the District began a disciplinary proceeding against plaintiff under New York Education Law § 3020-a.  Second Am. Compl. ¶ 46; *see* N.Y. Educ. Law § 3020-a (framework for adjudicating disciplinary charges against tenured school employees).

The Section 3020-a arbitrator found plaintiff guilty of misconduct.  *See* Second Am. Compl. ¶ 101.  Plaintiff alleges that in the course of doing so, the arbitrator made numerous

errors.  The arbitrator allegedly failed to "properly evaluate[] or accord[] the appropriate weight" to Maldonado's and Alexander's "pecuniary interest[s] in the outcome of the proceeding."  *Id.* ¶¶ 60-61; *see id.* ¶ 93.  Plaintiff also alleges that Maldonado gave "conflicting testimony" during the Section 3020-a proceeding, and that her testimony conflicted with her deposition testimony from a different lawsuit.  *Id.* ¶¶ 69-80. Plaintiff characterizes Alexander's testimony as "incredible as a matter of law" and notes alleged inconsistencies in Alexander's Section 3020-a testimony and her other deposition testimony.  *Id.* ¶¶ 81-89.  The Section 3020-a arbitrator allegedly ignored those inconsistencies, failed to weigh the testimony properly, and "failed to fairly evaluate the evidence with an unbiased eye."  *Id.* ¶¶ 93-100.

After the arbitrator found plaintiff guilty of misconduct, the New York State Commissioner of Education (the "Commissioner") issued a "Notice of Substantial Question of Moral Character" pursuant to Part 83 of the State's education regulations, 8 N.Y.C.R.R. § 83.1 *et seq.*   Second Am. Compl. ¶ 101.   That regulation provides for "a hearing before an administrative panel to determine whether a claim of misconduct against a teaching license-holder raises a reasonable question of moral character."  *Mudge v. Zugalla*, 939 F.3d 72, 75 (2d Cir. 2019).  The purpose of a Part 83 hearing is to determine "whether the individual's [teaching] certification should be revoked or suspended or whether another penalty should be imposed."  8 N.Y.C.R.R. § 83.4(a).

Plaintiff's Part 83 hearing was held on July 26, 2012.  Second Am. Compl. ¶ 105.  At the hearing, the hearing officer gave the Section 3020-a findings "collateral effect" and found that plaintiff "had engaged in inappropriate conduct . . . evidencing a clear lack of good moral character.  *Id.* ¶¶ 107-08.  The hearing officer decided that plaintiff's teaching certificates should be revoked.  *See id.* ¶ 108.

3

Plaintiff challenged the Part 83 determination through an Article 78 proceeding in state court. *See id.* ¶ 110. After plaintiff filed his state court action, the NYSED agreed to review the Part 83 determination. *Ibid.* On October 26, 2015, then-Commissioner of Education Elia remanded plaintiff's case to the Part 83 hearing officer to consider new evidence. *See id.* ¶ 111. Plaintiff alleges that the subsequent proceedings before the Part 83 hearing officer were deficient because plaintiff was not permitted to offer character witnesses and the proceedings were "rife with irregularities." *Id.* ¶ 112. In 2017, the Commissioner of Education decided that plaintiff's teaching licenses would remain revoked. *Ibid.*

## II.     Procedural Background

Plaintiff filed a complaint on December 7, 2018, bringing claims under 42 U.S.C. § 1983 against the NYSED. *See* Compl. (Dkt. #1). Plaintiff alleged that the NYSED violated his procedural and substantive due process rights by basing its decision on an insufficient record, "fail[ing] to properly accord the appropriate weight to inconsistent testimony given by material fact witnesses[,] [failing] to provide [p]laintiff with a vehicle to challenge [those] inconsistencies," and failing to provide him with due process rights at his Part 83 hearings. *Id.* ¶¶ 115-18. Plaintiff sought damages and injunctive and declaratory relief. *Id.* ¶¶ 113, 118. Plaintiff also brought a facial challenge to Section 3020-a under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *See id.* ¶¶ 2, 52, 56.

On November 8, 2019, Judge Roslynn R. Mauskopf *sua sponte* dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2). Order dated Nov. 8, 2019 (Dkt. #14). Judge Mauskopf found that plaintiff's claims against the NYSED for money damages and back pay and for a retrospective declaration that revocation of his teaching license violated due process were barred by sovereign immunity. *Id.* at 7-8. To the extent that plaintiff also sought prospective injunctive relief, Judge Mauskopf found that the NYSED was not a "person" suable under Section 1983 and

4

that all of plaintiff's claims were time-barred except for claims based on the Commissioner's 2017 decision to uphold the license revocation.  *Id.* at 9-10.  Judge Mauskopf also rejected plaintiff's facial challenge to Section 3020-a as meritless.  *Id.* at 10.  Judge Mauskopf gave plaintiff leave to amend the complaint.  *Id.* at 10-11.  Plaintiff filed a First Amended Complaint on December 10, 2019.  *See* First Am. Compl. (Dkt. #16).  The case was subsequently reassigned to me.

Plaintiff filed the operative complaint, which appears substantially similar to the First Amended Complaint, on January 25, 2021.  *See* Second Am. Compl.  In addition to the NYSED, the complaint names former Commissioner Elia as a defendant.  *See ibid.*  Instead of bringing claims under Section 1983, plaintiff states that the action is based on "[d]iversity of [c]itizenship" under the federal Constitution, the "Treaty of Peace [and] Friendship [of] 1786," the United Nations Declaration of Rights for Indigenous Peoples, and defendants' violation of plaintiff's due process rights.  Second Am. Compl. ¶ 1.  Construed liberally, the complaint brings six claims.

First, plaintiff alleges that defendants violated his constitutional rights.  Plaintiff asserts that defendants deprived him of procedural and substantive due process by basing their decisions on insufficient evidence, "fail[ing] to properly accord the appropriate weight to inconsistent testimony given by material fact witnesses[,] [and] [failing] to provide [p]laintiff with a vehicle to challenge [those] inconsistencies."  *Id.* ¶ 116.

Plaintiff further alleges that defendants violated his procedural and substantive due process rights at his Part 83 hearings.  *See id.* ¶ 119.  Plaintiff states that defendants did not base their decisions on sufficient evidence, failed to properly weight testimony, and failed to give plaintiff a way to challenge inconsistencies.  *Id.* ¶ 120.  Plaintiff alleges that the Commissioner

"failed to provide a burden of proof." *Id.* ¶ 121.  And plaintiff states that defendants violated his due process rights by not permitting him to confront his accusers in the Part 83 hearings.  *Id.* ¶ 117.  Relatedly, plaintiff states that defendants violated his "rights to face the injured party or review the violated contract[] [and] read [a] signed . . . affidavit."  *Id.* ¶ 121.  Plaintiff appears to claim that defendants' decision in that respect violated his due process rights.  *See ibid.*  Plaintiff claims additional due process violations based on his expectation that all "hearing[s]" and "court proceedings . . . be fair and lawful . . . according to [e]quitable [e]stoppel."  *Id.* Addendum 1.

The complaint includes an appendix that appears to detail additional ways that defendants violated plaintiff's due process rights.  *See id.* App. 1.  The appendix also claims that the NYSED violated "other [c]onstitutional rights such as" plaintiff's Fifth and Sixth Amendment rights.  *Id.* App. 4.  Plaintiff's responses to defendants' motion to dismiss also invoke the Eight Amendment.  Pl.'s Letter dated June 7, 2021 at 3 (Dkt. #49).

Second, plaintiff claims that defendants violated his treaty rights.  *Id.* at 1.

Third, plaintiff claims that defendants violated 42 U.S.C. § 14141 by denying his witnesses an opportunity to testify.  Second Am. Compl. Addendum 1.

Fourth, plaintiff argue that the "fruit of the poisonous" tree doctrine applies to his case because defendants "accepted hearsay" from the District.  *Ibid.*

Fifth, plaintiff asserts that the Commissioner lacked jurisdiction over him and argues that "[s]tate [and] [f]ederal agencies must uphold the [federal] Constitution (Article [III] [and] Article [VI])."  *Id.* ¶ 117.  Plaintiff suggests that "the United States Federal Court []Consul Court" and an Article III judge would have had proper jurisdiction.  *See id.* Addendum 1.

Sixth, the complaint brings a facial challenge to Section 3020-a.  *Id.* ¶ 2.

Defendants filed a motion to dismiss the amended complaint on May 24, 2021.  *See* Mem. in Supp. of Mot. to Dismiss (Dkt. #46) ("Defs.' Mem.").  Plaintiff filed three letters in response, *see* Pl.'s Letter dated June 1, 2021 (Dkt. #50); Pl.'s Letter dated June 7, 2021 (Dkt. #49); Pl.'s Letter dated June 14, 2021 (Dkt. #51).  The responses appear to raise additional breach of contract and negligence claims.  *See* Pl.'s Letter dated June 1, 2021 at 2.  Defendants filed a letter reply on July 8, 2021, *see* Defs.' Reply (Dkt. #53), and plaintiff filed a sur-reply without the Court's permission on August 12, 2021, *see* Pl.'s Letter dated Aug. 2, 2021 (Dkt. #55).

On January 17, 2022, the Court advised plaintiff that it was prepared to *sua sponte* dismiss plaintiff's Section 14141 claim, plaintiff's claim under the "fruit of the poisonous tree" doctrine, plaintiff's claim attacking the NYSED's jurisdiction, and plaintiff's negligence claim against the NYSED.  *See* Order dated Jan. 17, 2022; *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) (collecting cases); *Hughes v. Anderson*, 449 F. App'x 49, 51 (2d Cir. 2011) (summary order).  The Court invited plaintiff to respond to those potential grounds for dismissal, *see* Order dated Jan. 17, 2022., but plaintiff did not submit a response.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

When a plaintiff is proceeding *pro se*, the complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted).  Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the plaintiff should be given an opportunity to amend the complaint.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999) (per curiam)); *see Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

Federal Rule of Civil Procedure 12(b)(5) "provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m)."  *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) (citation omitted).  Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  If the plaintiff shows "good cause for the failure," then "the court must extend the time for service for an appropriate period."  *Ibid.*

"[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)); *see, e.g., Vidurek v. Koskinen*, 789 F. App'x 889, 893 (2d Cir. 2019) (summary order).  "Plaintiff must meet this burden by making a prima facie case of proper service through specific factual allegations and

any supporting materials." *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).   A plaintiff's "conclusory statements are not sufficient to overcome a defendant's sworn affidavit that service was improper." *Ibid.*; *see Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

In evaluating a motion to dismiss based on insufficient service of process, the court "must consider information outside the complaint to determine whether service was sufficient." *Corley v. Vance*, 365 F. Supp. 3d 407, 431 (S.D.N.Y. 2019) (citation omitted), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020).

## DISCUSSION

Plaintiff's claims against NYSED for federal constitutional, statutory, and treaty violations, and his facial challenge to the constitutionality of Section 3020-a, are dismissed for failure to state a claim.   Plaintiff's claims against Elia are dismissed without prejudice for failure to timely serve process.   I decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

### I.      Federal Claims Against New York State Department of Education

Plaintiff claims that the NYSED deprived him of his rights under the federal Constitution and numerous treaties, violated 42 U.S.C. § 14141, and introduced "fruit of the poisonous tree" at his hearings.   He also brings a facial challenge to the constitutionality of Section 3020-a.   As explained below, these claims fail to state a claim upon which relief may be granted.

#### A.      Constitutional Claims

Plaintiff's constitutional claims against NYSED are dismissed.   Plaintiff purports to bring those claims under the federal Constitution and the "T[reaty] [of] P[eace] [and] F[riendship]."   Second Am. Compl. 30, 31, Addendum 1 (headings for "Cause of Action I," "Cause of Action II," and "Cause of Action III").   The complaint also cites the United Nation's "Declaration of

Rights for Indigenous Peoples." *Id.* ¶ 1.  Plaintiff's responses to defendants' motion invoke the "Treaties-Act of Algiers 1906, Jay Treaty, Treaty of Peace and Friendship 1787, Treaty of Paris 1856[,] [and] 1836 Treaty of Peace between Morocco and United States."  Pl.'s Letter dated June 7, 2021 at 1.  Plaintiff also references the "Moroccan Treaty of 1856" and the "Treaty between Morocco and Great Britain 1856."  Pl.'s Letter dated June 14, 2021 at 1, 2.

Construed liberally, these claims arise under Section 1983, which "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).  No alternative sources that plaintiff invokes provide a vehicle for bringing plaintiff's constitutional claims.  The treaties that plaintiff cites do not do so.  The United States is not a signatory to the Treaty of Paris of 1856 or the 1856 Treaty between Great Britain and Morocco, *see* Khalid Ben-Srhir, *Britain and Morocco During the Embassy of John Drummond Hay, 1845-1886* xv (Malcolm Williams & Gavin Waterson, trans., 2005) (describing 1856 bilateral treaty between Britain and Morocco); S. Andrew Scharfenberg, *Regulating Traffic Flow in the Turkish Straits: A Test for Modern International Law*, 10 Emory Int'l L. Rev. 333, 341 (1996) (explaining that Treaty of Paris of 1856 was signed by Great Britain, Austria, France, Prussia, Russia, Sardinia, and Turkey after Russia's defeat in the Crimean War), and plaintiff has not explained how either treaty relates to his allegations.

Moreover, neither the United Nations Declaration on the Rights of Indigenous Peoples nor the Treaties of Peace and Friendship of 1787 and 1836 give rise to any causes of action.  *See Joyner-El v. Giammarella* No. 09-CV-3731 (NRB), 2010 WL 1685957, at *3 n.4 (S.D.N.Y. Apr. 15, 2010) (finding that United Nations Declaration on the Rights of Indigenous Peoples does not create a federal cause of action); *Nietzsche v. Freedom Home Mortg. Corp.*, No. 18-CV-1930

(SI), 2019 WL 5057174, at *6 (D. Ore. Oct. 8, 2019) (same); *Dingle v. Baggett*, No. 19-CV-425 (D), 2020 WL 5245986, at *4 (E.D.N.C. July 31, 2020) (same), *objections to memorandum and recommendation overruled by* 2020 WL 5217393 (E.D.N.C. Sept. 1, 2020), *aff'd*, 860 F. App'x 41 (4th Cir. 2021); *Steele-El v. Valvoline Instant Oil Change*, No. 18-CV-12277, 2019 WL 4640348, at *5 (E.D. Mich. Sept. 24, 2019) (dismissing claims pursuant to "the Treaty of Peace and Friendship of 1787 and 1836 . . . because the Treaty of Peace and Friendship does not provide a private cause of action in a civil case" (internal quotation marks and citation omitted)); *Bey v. Qusim*, No. 19-CV-16349 (MAS) (DEA), 2020 WL 4364332, at *2 n.1 (D.N.J. July 29, 2020) (same).  The Treaties of Peace and Friendship "simply [have] no relevance to [p]laintiff's . . . rights" with respect to the revocation of a teaching certificate in the State of New York.  *El v. O'Brien*, No. 12-CV-1793 (DLI) (JMA), 2012 WL 2367096, at *3 (E.D.N.Y. June 20, 2012) (collecting cases).

Although the Court has not been able to locate a "Treaties-Act of Algiers 1906," *see* Pl.'s Letter dated June 7, 2021 at 1, plaintiff may have intended to invoke the 1906 General Act of the International Conference at Algeciras ("Algeciras Convention"), *see* General Act of the International Conference at Algeciras, Apr. 7, 1906, 34 Stat. 2905.  No court appears to have addressed whether the Algeciras Convention is self-executing.  In any event, that treaty reformed Moroccan governance, regulated the Moroccan arms trade, and called for the creation of institutions like a police force, a state bank, a customs committee.  *See* Algeciras Convention, arts. 1-12, 13-30, 31, 97.  Nothing in the treaty provides a cause of action for plaintiff to bring his constitutional claims relating to the revocation of his teaching license, and plaintiff has not identified a provision in the treaty that bears any relevance to this case.

Finally, plaintiff cannot rely on the Jay Treaty.  Although the Jay Treaty was self-executing upon ratification, *see Akins v. United States*, 551 F.2d 1222, 1224-25 (C.C.P.A 1977), that treaty does not provide plaintiff with a cause of action to bring his due process, Fifth, Sixth, and Eighth Amendment claims.  The Jay Treaty "was designed to discharge the unfulfilled promises of the 1783 Treaty of Peace" that followed the Revolutionary War, "which . . . had sought to protect the land and credit interests of British nationals in America."  Henry Paul Monaghan, *Article III and Supranational Judicial Review*, 107 Colum. L. Rev. 833, 852 (2007).  To achieve that end, the Jay Treaty created commissions to arbitrate claims by British subjects who had contracted debts before the end of the Revolutionary War and claims by American citizens concerning losses caused by British war activities.  *See* Treaty of Amity, Commerce, and Navigation, Between His Britannick Majesty and the United States of America, by their President, with the Advice and Consent of their Senate ("Jay Treaty"), arts. 6, 7, U.S.-U.K., Nov. 19, 1794, 8 Stat. 116; Monaghan, *Supranational Judicial Review*, at 852-54.  In addition, Article III of the Jay Treaty guaranteed free passage "to the Indians dwelling on either side of the . . . boundary line" between the United States and what is now Canada.  Jay Treaty, art. 3.  Section 289 of the Immigration and Naturalization Act, 8 U.S.C. § 1359, codifies Article III's guarantee of free passage by permitting "American Indians born in Canada to pass the borders of the United States."  8 U.S.C. § 1359; *see* Bryan Nickels, Note, *Native American Free Passage Rights Under the 1794 Jay Treaty: Survival Under United States Statutory Law and Canadian Common Law*, 24 B.C. Int'l & Comp. L. Rev. 313, 314 (2001).  Plaintiff's claims relate to the revocation of his teaching license, not passage over the Canadian border or losses that he sustained during the Revolutionary War.  Therefore, nothing in the Jay Treaty appears to provide

a cause of action for plaintiff's constitutional claims, and plaintiff has identified no provision in the treaty that bears any relevance to this case.

Moreover, plaintiff cannot bring his constitutional claims "directly under the United States Constitution where a statutory vehicle for the assertion of such a claim exists." *Alleyne v. N.Y. State Educ. Dep't*, 691 F. Supp. 2d 322, 335 n.10 (N.D.N.Y. 2010); *see Ighile v. Kingsboro ATC*, No. 16-CV-4294 (AMD) (JO), 2018 WL 1970737, at *1 n.4 (E.D.N.Y. Apr. 25, 2018) (collecting cases).  Since plaintiff alleges the deprivation of federally guaranteed rights under color of state law, *see, e.g.*, Second Am. Compl. ¶¶ 115-21, Section 1983 provides a statutory cause of action plaintiff's constitutional claims.  Plaintiff therefore cannot bring those claims directly under the Constitution.

Plaintiff cannot proceed on his constitutional claims against NYSED under Section 1983 because of Judge Mauskopf's prior dismissal of those claims.  Judge Mauskopf dismissed plaintiff's claims under Section 1983 against the NYSED in 2019.  *See* Order dated Nov. 8, 2019 at 6-9.  Judge Mauskopf reasoned that the NYSED has sovereign immunity against money damages claims and claims for retrospective relief and is not a suable "person" against whom prospective injunctive relief may be obtained under Section 1983.  *Ibid.*  "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."  *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks and citation omitted).  Cogent and compelling reasons include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Id.* at 99-100 (citation omitted).

Plaintiff has not identified cogent and compelling reasons to depart from Judge Mauskopf's holdings. Construed liberally, the appendix to plaintiff's complaint suggests that the Order dismissing the original complaint pursuant to 28 U.S.C. § 1915(e)(2) should not control certain issues with respect to the amended complaint because plaintiff ultimately paid the filing fee. *See* Second Am. Compl. App. 4. Section 1915(e)(2) provides that "[n]otwithstanding any filing fee . . . that may have been paid, the court shall dismiss [a case brought by a litigant who applies to proceed *in forma pauperis*] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). At the time that the Court issued the Order dated November 8, 2019, plaintiff's application to proceed *in forma pauperis* was pending, and the Court granted that application "for the purposes of [the] Order only." Order dated Nov. 8, 2019 at 1. As such, *sua sponte* dismissal under Section 1915(e)(2) was appropriate.

The appendix to plaintiff's complaint also appears to argue that the NYSED does not have sovereign immunity from a lawsuit in federal court and that the NYSED is a person. *See* Second Am. Compl. App. 4. But plaintiff does not identify any change in the law, new evidence, clear error in the Court's Order, or manifest injustice. To the contrary, the fact that the NYSED is not a person within the meaning of Section 1983 and the fact that NYSED has sovereign immunity are well-established. *See, e.g.*, *Berkowitz ex rel. Berkowitz v. N.Y.C. Bd. of Educ.*, 921 F. Supp. 963, 970 (E.D.N.Y. 1996); *Sherman v. Harris*, No. 11-CV-4385 (DLI) (JMA), 2012 WL 4369766, at *6 (E.D.N.Y. Sept. 24, 2012). The Court will adhere to the previous ruling that plaintiff cannot seek money damages, retrospective relief, or prospective injunctive relief against the NYSED for alleged deprivations of plaintiff's constitutional rights under Section 1983. Plaintiff's constitutional claims against the NYSED are dismissed.

### B.      Treaty Claims

Plaintiff's treaty claims are also dismissed.  Plaintiff's complaint appears to allege violations of the "Treaty of Peace [and] Friendship" and the United Nations Declaration on the Rights of Indigenous Peoples.  Second Am. Compl. ¶¶ 1-2.  Plaintiff's responses to defendants' motion clarify that he claims that the NYSED violated his "treaty rights" under the "Treaties-Act of Algiers 1906, Jay Treaty, Treaty of Peace and Friendship 1787, Treaty of Paris 1856[,] [and] 1836 Treaty of Peace between Morocco and United States."  Pl.'s Letter dated June 7, 2021 at 1.

None of the treaties cited in plaintiff's papers grant him rights relevant to the revocation of his teaching license that plaintiff can enforce in federal court.  As explained above, the treaties have no apparent relationship to the rights at issue this case.  Plaintiff invokes the treaties in connection with his claim that he is "a Moorish American National" whose "country is Morocco located on the North American continent."  Second Am. Compl. Appendix 4; *see* Pl.'s Letter dated June 7, 2021 at 1 (identifying plaintiff as "a foreign alien . . . and a national to the Moroccan Empire at Morocco/Turtle Island"); Pl.'s Letter dated June 1, 2021 at 1 (explaining connection to listed treaties).  He also asserts that the Fourteenth Amendment "was never ratified by the unincorporated Congress," and so "the law of the land is the . . . Constitution[,] . . . Treaty of Peace & Friendship 1786[,] and the United Nation Rights of Indigenous People 2010."  Second Am. Compl. App. 1.  But "[a]ny claims or arguments raised by [p]laintiff which are based on his membership in the Moorish American Nation are . . . frivolous."  *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 272-73 (D.N.J. May 13, 2011); *Johnson El v. Bird*, No. 19-CV-5102 (CS), 2020 WL 5124920, at *4 (S.D.N.Y. Aug. 31, 2020) (finding claims asserted under "Treaty with Morocco[] 1787" to be frivolous).

Nor do those treaties strip jurisdiction from New York to revoke plaintiff's teaching license.  *See* Second Am. Compl. ¶ 117; *id.* Addendum 1.  Even though plaintiff claims to be a

Moorish American National and a non-citizen, *see, e.g.*, Pl.'s Letter dated June 14, 2021 at 3, he was still subject to the laws of New York during the time that he resided in and was employed by the state, *see, e.g.*, *Bey v. Jamaica Realty*, No. 12-CV-1241 (ENV), 2012 WL 1634161, at *1 n.1 (E.D.N.Y. May 9, 2012); *Gordon v. Deutsche Bank Nat'l Tr. Co.*, No. 11-CV-5090 (WFK), 2011 WL 5325399, at *1 n.1 (E.D.N.Y. Nov. 3, 2011); *Bey v. Bailey*, No. 09-CV-8416, 2010 WL 1531172, at *4 (S.D.N.Y. Apr. 15, 2010); *El-Bey v. North Carolina*, No. 11-CV-423 (FL), 2012 WL 368374, at *2 (E.D.N.C. Jan. 9, 2012), *report and recommendation adopted by* 2012 WL 368369 (E.D.N.C. Feb. 3, 2012).

For those reasons, plaintiff's claims that his treaty rights have been violated fail to state a claim upon which relief may be granted and are dismissed.

### C.     Facial Challenge to Section 3020-a

Plaintiff's challenge to the constitutionality of Section 3020-a, *see* Second Am. Compl. ¶ 2, is dismissed under the law-of-the-case doctrine. Judge Mauskopf already dismissed that challenge on the basis of the Second Circuit's "unequivocal[] [holding] that [Section] 3020-a comports with the due process and equal protection requirements of the Fourteenth Amendment." Order dated Nov. 8, 2019 at 10 (citing *Roemer v. Bd. of Educ.*, 150 F. App'x 38, 40 (2d Cir. 2005) (summary order)). Plaintiff has given no cogent and compelling reason to depart from Judge Mauskopf's holding. Because it is the law of the case that Section 3020-a is constitutional, plaintiff's facial challenge is dismissed.

### D.     Section 14141 Claim

Plaintiff's claim under 42 U.S.C. § 14141 is meritless. Section 14141 makes it "unlawful for any governmental authority . . . or any person acting on behalf of a governmental authority[] to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by [federal law]." 34 U.S.C. §

16

12601(a) (formerly cited as 42 U.S.C. § 14141). The statute permits the Attorney General to bring a civil action to "obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." *Id.* § 12601(b). Here, plaintiff seeks to employ Section 14141 to bring a claim that his witnesses were impermissibly denied an opportunity to testify during the Part 83 hearings. Second Am. Compl. Addendum 1. Because Section 14141 provides a cause of action by the Attorney General, not private citizens, plaintiff cannot bring an action under that statute. *See Buckner v. Shumlin*, No. 12-CV-90 (JGM), 2013 WL 6571814, at *4 (D. Vt. Dec. 13, 2013); *Fudge v. Phoenicia Times*, No. 09-CV-301, 2009 WL 2568576, at *2 (N.D.N.Y. Aug. 19, 2009); *Rose v. N.Y.C. Dep't of Human Res.*, No. 12-CV-1764 (GBD) (KNF), 2013 WL 323995, at *1 n.1 (S.D.N.Y. Jan. 24, 2013). Accordingly, plaintiff's Section 14141 claim is dismissed.

### E.    Fruit of the Poisonous Tree

Plaintiff's claim under the "[f]ruit of [the] [p]oison[ous] [t]ree" doctrine, *see* Second Am. Compl. Addendum 1, is also dismissed. "The fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure[,] . . . . and as such has generally been held to apply only in criminal trials." *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (internal quotation marks and citation omitted). Because the "fruit of the poisonous tree" doctrine does not apply in plaintiff's civil action, that claim is dismissed.

### F.    Federal Claims Mentioned In Other Filings

Although the parties have referenced other potential federal claims, those claims are not properly before the Court.

Defendants' motion papers refer to claims based on the 1796 Treaty of Peace and Amity between the Dey of Algiers and the United States, the 1783 Treaty of Paris, the 1814 Treaty of Ghent, 18 U.S.C. §§ 241 and 242, and 18 U.S.C. § 1091. See Defs.' Mem. 8 n.5. Those treaties and statutes appear to be mentioned in a paper filed prior to the Second Amended Complaint.

*See* Summons (Dkt. #32).  The Second Amended Complaint superseded any earlier submissions and rendered them of no legal effect.  *See Bey v. City of New York*, 454 F. App'x 1, 3 (2d Cir. 2011) (summary order); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Accordingly, I will not consider treaties or claims reference only in papers filed prior to the Second Amended Complaint.

Defendants' letter reply in support of their motion also references claims that do not appear in the Second Amended Complaint or in plaintiff's responses to defendants' motion, *see* Defs.' Reply at 2, and so the Court directed defendants to identify where plaintiff raised those claims, see Order dated Nov. 4, 2021.   Defendants indicated that plaintiff had sent them a different letter than the letter dated June 1, 2021 that plaintiff had filed on the docket.  *See* Defs.' Corrected Letter dated Nov. 12, 2021 (Dkt. #58).  The Court ordered plaintiff to inform the Court whether plaintiff intended the letter sent to defendants to be his filing.  *See* Order dated Nov. 15, 2021.  Plaintiff's response stated that his letter "under no certain terms . . . introduce[d] any new claims to [his] complaint under the American[s] with Disabilities Act and other statutes," and if the Court's supposition "was accurate as stated then [plaintiff] would have submitted an amended or new complaint to express [his] argument."  Pl.'s Letter dated Nov. 12, 2021 (Dkt. #60).  Because plaintiff has disavowed new statutory claims raised in his letter to defendants, the Court will not consider them.

Finally, after defendants' reply, plaintiff filed an unauthorized sur-reply.  *See* Pl.'s Letter dated Aug. 2, 2021 (Dkt. #55).  "[S]upplemental filings require leave of the court," and a district court has "discretion to decide whether to strike or permit a litigant's sur-reply."  *Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020).  Although the sur-reply appears to reiterate many of the arguments raised in plaintiff's other submissions, defendants have not been given an

opportunity to respond to plaintiff's unauthorized filing.  Accordingly, to avoid prejudice to defendants, I will strike the sur-reply and not consider its contents in deciding defendants' motion.

## II.     Claims Against Elia

Construed liberally, the complaint brings all claims against Elia as well as the NYSED. Defendants argue that the claims against Elia should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for failure to serve timely process on Elia.  Defs.' Mem. at 6-8. Because plaintiff has not properly served Elia and is not entitled to an extension of time to serve process, plaintiff's claims against Elia are dismissed without prejudice.

### A.     Plaintiff has not shown that Elia was properly served.

Plaintiff does not specify whether he sues Elia in her person capacity, official capacity, or both capacities.  Regardless, plaintiff has failed to show that he effected proper service on Elia.

There are different requirements for serving process on a person sued in her personal and official capacities.  "A suit against an individual in [her] personal capacity is not a suit against the governmental entity," whereas "[a] claim asserted against an individual in [her] official capacity . . . is in effect a claim against the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (internal citation omitted).  Accordingly, Federal Rule of Civil Procedure 4(j)(2), which governs service of process to a state agency, specifies how process must be served on persons sued in their official capacity, *see Rutherford v. Fla. Union Sch. Dist.*, No. 16-CV-9778 (KMK), 2018 WL 11249126, at *3 (S.D.N.Y. Oct. 24, 2018); *Sun v. Cuomo*, No. 19-CV-497 (MAD) (DJS), 2019 WL 5307359, at *2 n.1 (N.D.N.Y. Oct. 21, 2019); *Stoianoff v. Comm'r of Motor Vehicles*, No. 99-7363, 2000 WL 287720, at *1 (2d Cir. 2000) (summary order).  Rule 4(e) provides the requirements for service on persons used in their individual capacity.  *Sun*, 2019 WL 5307359, at *2; *Stoianoff*, 2000 WL 287720, at *1.

19

Plaintiff has not demonstrated that he properly served Elia in her official capacity.  Under Federal Rule of Civil Procedure 4(j)(2), a state officer sued in her official capacity "must be served by . . . (A) delivering a copy of the summons and of the complaint to [the state agency's] chief executive officer" or "(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  New York law, in turn, provides that personal service on a state officer "sued solely in an official capacity . . . shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail . . . to such officer or to the chief executive officer of such agency, and by personal service upon the state" by delivering the summons to an assistant attorney general at an office of the Attorney General or to the Attorney General within the state.  N.Y. C.P.L.R. § 307(1); *id.* § 307(2).  New York law further specifies that "[s]ervice by certified mail shall not be effective unless the front of the envelope" includes the words urgent legal mail "in capital letters."  *Id.* § 307(2).

Defendants have submitted a declaration from deputy counsel for the NYSED that chronicles plaintiff's attempts to serve Elia.  *See* Decl. of Aaron M. Baldwin (Dkt. #45). Plaintiff appears to have first attempted service on Elia on December 13, 2019, shortly after plaintiff filed his first amended complaint naming Elia as a defendant.  *See id.* ¶ 14.  The NYSED received an envelope addressed to Elia that contained an amended complaint but no summons.  *Ibid.*  On December 23, 2019, the NYSED received an addendum to the amended complaint addressed to Elia.  *Id.* ¶ 15.  On November 10, 2020, the NYSED was personally served with a copy of a summons addressed to the NYSED and Elia and a document titled "Claim."  *Id.* ¶ 16.  The "Claim" document is not a copy of the First Amended Complaint or the

operative complaint, *see* Summons (Dkt. #32); Decl. of Aaron M. Baldwin Ex. 4 (Dkt. #45-4), but rather appears to be a three-page list of claims that partially overlaps with those raised in the amended complaints.  Finally, on December 7, 2020, the NYSED received a letter by certified mail to the attention of Elia that included a copy of an amended complaint.  *See* Decl. of Aaron M. Baldwin ¶ 17; *id.* Ex. 5 (Dkt. #45-5).  Defendants argue that none of these efforts constituted proper service.  *See* Defs.' Mem. at 6-8.

Although plaintiff does not expressly respond to defendants' argument, plaintiff provides his own evidence concerning service on Elia.  Plaintiff includes certification from a process server that the amended complaint was sent by certified mail to Elia at the NYSED's address on December 1, 2020, as well Postal Service receipts.  *See* Pl.'s Letter dated June 7, 2021 at 5-7. Plaintiff also submits proof of service from a process server that a summons was sent by certified mail to Elia on December 1, 2020, an affidavit of service indicating that the NYSED was served with a summons on October 29, 2020, invoices for service on October 29, 2020 and November 7, 2020, and additional Postal Service receipts.  *See* Pl.'s Letter dated June 1, 2020 at 4-9.

Plaintiff has not established "a prima facie case of proper service" on Elia "through specific factual allegations and any supporting materials."  *Sikhs for Justice*, 850 F. Supp. 2d at 440 (citation omitted).  Plaintiff's evidence does not show (i) that a copy of the summons and the complaint were delivered pursuant to Rule 4(j)(2)(A); (ii) that the summons and the complaint were delivered pursuant to New York law, or (iii) that the summons and the complaint were sent by certified mail in a properly marked envelope *and* delivered to the New York Attorney General or an assistant attorney general.  *See* N.Y. C.P.L.R. § 307(1); *id.* § 307(2).  At most, it appears that plaintiff mailed a copy of the amended complaint without the summons, delivered a copy of the summons and a copy of document titled "Claim" to the NYSED, and then mailed and did not

21

deliver to the Attorney General or an assistant attorney general a copy of the amended complaint. These efforts do not suffice under Federal Rule of Civil Procedure 4(j)(2).  *Cf. Sun*, 2019 WL 5307359, at *2-3; *Wendell v. N.Y. State Ins. Dep't*, No. 04-CV-2889 (DRH) (ETB), 2007 WL 2455132, at *4-5 (E.D.N.Y. Aug. 23, 2007); *Fitzgerald v. Kellner*, No. 02-CV-926 (NAM) (RFT), 2006 WL 6549889, at *3 (N.D.N.Y. Oct. 31, 2006).

Nor has plaintiff shown that he properly served Elia in her personal capacity.  Federal Rule of Civil Procedure 4(e) provides that an individual may be served by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2).  An individual may also be served in any manner permitted by state law.  Fed. R. Civ. P. 4(e)(1).  In addition to personal service, New York law allows service on an individual by a combination of delivery to the individual's place of business and mail.  *See* N.Y. C.P.L.R. § 308(2).

As discussed above, plaintiff has not established through specific factual allegations and supporting materials that he delivered a copy of the summons and the complaint to Elia or left a copy of each at her dwelling.  *See* Fed. R. Civ. P. 4(e)(2)(A)-(B); *Sikhs for Justice*, 850 F. Supp. 2d at 440.  And plaintiff's various attempts to deliver the summons and complaint to the NYSED did not qualify as delivering a copy to an agent authorized to receive service of process for Elia as an individual.  *See* Fed. R. Civ. P. 4(e)(2)(C).  "Plaintiff has provided no evidence that [Elia] designated [the NYSED employees] to receive service of process on [her] behalf pursuant to [New York law], [and] . . . [p]laintiff [has not] even suggested that such authorization exists." *Baity v. Kralik*, 51 F. Supp. 3d 414, 430 (S.D.N.Y. 2014).  Nor has plaintiff suggested that the

person who received service in the NYSED represented that the NYSED employee was authorized to accept service for Elia in her individual capacity or that Elia knew about such a representation.  *See ibid.*  Plaintiff has therefore failed to show that he served Elia as provided by Federal Rule of Civil Procedure 4(e)(2).

Plaintiff has also failed to demonstrate proper service of Elia under the New York provision allowing service by a combination of personal delivery to a place of business and mail.  *See* N.Y. C.P.L.R. § 308(2).  That provision allows service by delivery of the summons and complaint "to a person of suitable age and discretion at the [defendant's] actual place of business" but requires that they also be mailed to the recipient's "last known residence" or "actual place of business."  *Ibid.*  "A defendant's 'actual place of business' is his or her business address at the time of service, and not when the cause of action arose."  *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595 (SJF) (ARL), 2014 WL 2863224, at *14 (E.D.N.Y. June 19, 2014) (internal quotation marks and citation omitted).  Elia no longer was the Commissioner of Education at the time that plaintiff attempted service.  *See* Defs.' Mem. 7; *see also* Decl. of Aaron M. Baldwin ¶ 14.  Plaintiff has not offered evidence that he delivered the summons and complaint to Elia's place of business at the time of service.  Plaintiff has therefore failed to show that he served Elia under Section 308(2).  *Cf. Valle v. GDT Enters., Inc.*, No. 19-CV-797 (SJF) (AKT), 2020 WL 435295, at *2-4 (E.D.N.Y. Jan. 28, 2020); *Assets Recovery 23, LLC v. Gasper*, No. 15-CV-5049 (RJD) (CLP), 2018 WL 5849763, at *6-10 (E.D.N.Y. Sept. 11, 2018), *report and recommendation adopted*, 2018 WL 5847102 (E.D.N.Y. Nov. 8, 2018); *Stair v. Calhoun*, No. 12-CV-6121 (SJF) (SIL), 2015 WL 1476454, at *7-8 (E.D.N.Y. Mar. 31, 2015).

**B.    An extension of time to serve Elia is not warranted.**

I decline to extend plaintiff's time to serve Elia.

### 1. Good Cause

Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If a plaintiff shows "good cause for the failure," then "the court must extend the time for service for an appropriate period." *Ibid.* "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [plaintiff's] control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013). In determining whether good cause exists, courts consider "(1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay." *Tolchin v. County of Nassau*, 322 F. Supp. 3d 307, 311 (E.D.N.Y. 2018), *aff'd,* 768 F. App'x 60 (2d Cir. 2019).

Plaintiff has not shown good cause for his delay here. He has identified no exceptional circumstances beyond his control that caused his attempts at service to fail. *Jordan*, 928 F. Supp. 2d at 598. Nor has he provided evidence from which the court can conclude his efforts at service have been diligent or reasonable. Plaintiff has been on notice of the moving defendants' service objection since at least May 24, 2021—when defendants filed a motion to dismiss invoking insufficient service—but he does not suggest that he has re-attempted service in the more than nine months since. *See Obot v. Citibank S.D., N.A.*, No. 04-CV-784 (A), 2006 WL 6905256, at *3 (W.D.N.Y. Oct. 17, 2006) ("As part of the determination of good cause for delay in service, courts have looked at the length of time it has taken to effect proper service after receipt of notice of a possible defect."), *aff'd,* 347 F. App'x 658 (2d Cir. 2009). Finally, plaintiff's *pro se* status "is no excuse for failure to serve the defendant properly and does not automatically amount to good cause." *Jordan*, 928 F. Supp. 2d at 598; *see Kogan*, 334 F.R.D. at 403; *see also Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se litigants generally are required to inform themselves

24

regarding procedural rules and to comply with them."). Accordingly, plaintiff has not established good cause for his failure to properly serve defendants.

### 2. Discretionary Exception

"[A] district court *may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) (emphasis in original); *see Counter Terrorist Grp. U.S. v. N.Y. Mag.*, 374 F. App'x 233, 234-35 (2d Cir. 2010) (summary order). To benefit from a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata*, 502 F.3d at 198. At that point, "courts in this [c]ircuit generally consider four factors: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (quotations omitted).

Here, I decline to exercise my discretion to grant an extension without good cause. Plaintiff has not offered a colorable excuse for his neglect. *Cf. Zapata*, 502 F.3d at 199 (affirming denial of extension of time to serve where plaintiff "neglected to ask for an extension within a reasonable period of time, and ha[d] advanced no cognizable excuse for the delay"). And "unlike the plaintiff in *Zapata*, who ultimately served the defendants only four days beyond the service deadline, plaintiff here *never* effected proper service on the defendants," even though he has been on notice of the deficient service for over nine months. *Carl v. City of Yonkers*, No. 04-CV-7031 (SCR), 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008) (emphasis in original) (declining to extend time to serve because plaintiff's *pro se* attempt at service was unsuccessful, plaintiff "made no further effort" to serve defendants, and plaintiff failed to seek any extension of time), *aff'd*, 348 F. App'x 599 (2d Cir. 2009); *see, e.g., Bogle-Assegai v. Connecticut*, 470

F.3d 498, 508-09 (2d Cir. 2006); *Fried v. N.Y. State Off. of Child. & Fam. Servs.*, No. 05-CV-5522 (NGG) (AKT), 2008 WL 4360749, at *6 (E.D.N.Y. Sept. 24, 2008); *Stewart v. City of New York*, No. 06-CV-15490 (RMB) (FM), 2008 WL 1699797, at *7 (S.D.N.Y. Apr. 9, 2008). Moreover, plaintiff has not argued or provided evidence that the *Vaher* factors are satisfied. *See* Pl.'s Letter dated June 1, 2021; Pl.'s Letter dated June 7, 2021; Pl.'s Letter dated June 14, 2021; *see also Emanuele v. Ranch for Kids, Inc.*, No. 17-CV-6426 (NGG) (SJB), 2018 WL 2248514, at *2 (E.D.N.Y. Apr. 27, 2018) (recommending dismissal based on insufficient service of process where plaintiff did not argue or provide evidence that the factors supporting an extension were satisfied), *report and recommendation adopted by* 2018 WL 2248509 (E.D.N.Y. May 16, 2018). Considering the factors commonly weighed in deciding whether to grant a discretionary extension, I decline to extend plaintiff's time to serve.

## III.      State Claims Against NYSED

Because I have dismissed all of plaintiff's federal claims in this action, I decline to exercise supplemental jurisdiction over plaintiff's state-law breach-of-contract and negligence claims. *See* Pl.'s Letter dated June 1, 2021 at 2. Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Those factors counsel in favor of dismissing plaintiff's state-law claims. This case is still in its preliminary stages. The action has not passed beyond the pleading stage, and it would be at least as convenient and fair for the parties to litigate plaintiff's state-law claims in state court. Indeed, "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006); *see Brzak v. United Nations*, 597

F.3d 107, 113-14 (2d Cir. 2010).   Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

## CONCLUSION

Plaintiff's claims against NYSED for violations of the Constitution, various treaties, 42 U.S.C. § 14141, and the fruit of the poisonous tree doctrine, as well as plaintiff's challenge to the constitutionality of Section 3020-a, are dismissed.   Plaintiff's claims against Elia are dismissed without prejudice.   The Court also strikes plaintiff's sur-reply and declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

Although a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco*, 222 F.3d at 112 (quoting *Gomez*, 171 F.3d at 795), plaintiff has already amended the complaint in this action twice, *see* Am. Compl.   There is "no indication that [p]laintiff[] [is] in possession of facts that could cure the [pleading] problem." *See United Veterans Mem'l & Patriotic Ass'n v. City of New Rochelle*, 72 F. Supp. 3d 468, 479 (S.D.N.Y. 2014).   Accordingly, plaintiff is denied leave to replead his claims.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: March 28, 2022
       Brooklyn, New York